IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT DADDIO, et al.           :     CIVIL ACTION
                                :
      v.                        :
                                :
THE A.I. DUPONT HOSPITAL FOR    :
CHILDREN OF THE NEMOURS         :
FOUNDATION, et al.              :     NO. 05-441

MEMORANDUM

McLaughlin, J.                               August 12, 2011


          This action arises from the death of the plaintiffs'

two year old son, Michael.  This case was filed against ten

defendants on February 1, 2005.  Eight of the defendants were

terminated by October of 2008.  On August 21, 2009, the Court

granted summary judgment in favor of the two remaining defendants

— the Nemours Foundation and Dr. William I. Norwood.  The two

defendants filed their bill of costs against the plaintiffs on

November 18, 2009.  On November 24, 2010, the United States Court

of Appeals for the Third Circuit affirmed the grant of summary

judgment.  On December 6, 2010, the defendants re-filed their

bill of costs against the plaintiffs, seeking $18,535.18.  The

plaintiffs filed objections to the bill of costs.  On June 1,

2011, the clerk taxed costs against the plaintiffs in the amount

of $15, 240.68.

          On June 3, 2011, the plaintiffs filed a motion to

vacate the clerk's taxation of costs.  The plaintiffs argue that

the defendants are not entitled to the following costs: (1) pro

hac vice fee; (2) cost of producing transcripts; (3) witness

fees; (4) costs of photocopying and exemplifications; and (5)

photocopy costs of Mark D. Villanueva.[1]  The plaintiffs also

argue that the Clerk failed to consider their inability to pay

the costs.

        The taxing of costs is governed by Fed. R. Civ. P.

54(d)(1), which provides in relevant part:

>       Except when express provision therefore is
>       made either in a statute of the United States
>       or in these rules, costs other than
>       attorneys' fees shall be allowed as of course
>       to the prevailing party unless the court
>       otherwise directs. . . .  On motion served
>       within 5 days thereafter, the action of the
>       clerk may be reviewed by the court.

The Rule limits the reimbursable costs to those enumerated in 28

U.S.C. § 1920, specifically:

>       1) Fees of the clerk and marshal; (2) Fees
>       for printed or electronically recorded
>       transcripts necessarily obtained for use in
>       the case; (3) Fees and disbursements for
>       printing and witnesses; (4) Fees for
>       exemplification and the costs of making
>       copies of any materials where the copies are
>       necessarily obtained for use in the case; (5)
>       Docket fees under section 1923 of this title;
>       (6) Compensation of court appointed  experts,
>       compensation of interpreters, and salaries,
>       fees, expenses, and costs of special
>       interpretation services under section 1828 of
>       this title.

---

[1]     Mr. Villanueva was counsel for the Nemours Foundation
for the majority of the proceedings.

The Clerk of Court is charged with taxing costs, but "the [district] court may review the clerk's action." Fed. R. Civ. P. 54(d)(1). A district court's review of the clerk's determination of costs is de novo. In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 461 (3d Cir. 2000). There is a "strong presumption" that costs are to be awarded to the prevailing party. Id. at 462. "Only if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party." Id. at 462-63, 468. Thus, if a district court, within its discretion, denies or reduces a prevailing party's award of costs, it must articulate its reasons for doing so. In re Paoli, 221 F.3d at 468.

The Court will consider each objection lodged by the plaintiffs seriatim.


A.    Pro Hac Vice Fee

The plaintiffs claim that the defendants are not entitled to the $40.00 pro hac vice fee for Mr. Hudgins. The clerk disallowed the pro hac vice fee when it taxed costs in this matter. The defendants concede that this cost is not taxable and admit that they mistakenly included it in their calculation. This objection is moot.

B.    Transcript Fees

The plaintiffs object to the inclusion of $7,061.76[2] in
transcript fees because the case was consolidated with twelve
others for discovery purposes.  They argue that the costs of the
pre-trial deposition and hearing transcripts should be divided
evenly among the different cases.  The defendants argue that the
award was proper and that only certain aspects of the case were
consolidated for discovery.

Transcript fees are recoverable where the transcripts
are "necessarily obtained for use in the case." 28 U.S.C. § 1920
(2); see also Montgomery County v. Microvote, No. 97-6331 2004 WL
1087196 at *4-5 (E.D. Pa. 2004).

This case was resolved on a motion for summary judgment
by the defendants.  In rendering its opinion on summary judgment,
the Court relied upon the deposition transcripts of Drs. Hannan
and Norwood, in addition to the transcripts from various pre-
trial hearings.  See, e.g., Daddio v. A.I. duPont Hosp. for
Children, 650 F. Supp. 2d 387, 393-400, 405, 408 n. 18 (E.D. Pa.
2009).  The transcripts were necessarily obtained for use in this
case.  The case had a complex pre-trial procedural history that

_____

[2]    The clerk calculated this figure based on (1) $1,503.00
in transcript fees from Mr. Villanueva; (2) $2,077.00 in court
report fees from Mr. Villanueva; and (3) $3,482.76 in transcript
fees.  In calculating transcript fees, the clerk disallowed
$1,800.00 in expert witness fees. Aff. of Sarah Lynn Petrosky,
Ex. E., Daddio Docket 215; Id. at Ex. B.

spanned nearly four years with numerous pre-trial motions, including multiple Daubert motions that relied on the pre-trial testimony of expert witnesses.  Given these facts, the transcripts were reasonably necessary to the case and are properly taxable.

The plaintiffs argue that the costs of the transcripts should be divided by thirteen because this case was consolidated with twelve others for various discovery issues.[3]  The plaintiffs cite no authority for this proposition.  Moreover, the cases were not part of a class action, nor were they consolidated for trial. Further, the defendants' bill of costs already discounts the costs of transcripts where there was an agreement to conduct joint discovery.  See Aff. of Sarah Lynn Petrosky, Daddio Docket 215, Ex. B.  The plaintiffs have not made any specific objection to these calculations.  Accordingly, the transcript costs are all properly taxable.


C.    Witness Fees

28 U.S.C. § 1920(3) specifically authorizes the clerk to tax witness fees.  This statute incorporates by reference 28 U.S.C. § 1821, which limits witness attendance fees to $40.00

---

[3]      The parties agreed to conduct joint discovery to reduce certain costs.  However, neither party has specifically alleged the extent of the agreement or what discovery costs would be split.

per day.  <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S.

437, 442 (1987).  The plaintiffs object to the taxation of

witness fees in the amount of $160.00,[4] arguing that the

witnesses' testimony was relevant in the other twelve cases, thus

the fees should be reduced.  This argument fails for the same

reason as the objection to the transcript fees.  The witnesses

for whom the defendants seek fees are not the witnesses for whom

they concede shared discovery.  Absent an allegation that there

was an agreement to share these specific costs, there is no

reason to divide the witness fees.  Because the witnesses'

testimony was relevant in this case, their fees are properly

taxable.


    D.   <u>Copying</u>

        The plaintiffs also contest the taxation of costs

associated with photocopying.  The photocopying expenses are

divided into two categories: photocopying of papers associated

with the case and exemplification — the production of exhibits to

be used at trial.

        28 U.S.C. § 1920(4) provides for taxation of "fees for

exemplification and copies of papers necessarily obtained for use

---

    [4]    The defendants initially sought three $40.00 fees and
one $1,800.00 fee for Dr. Hyde.  The clerk reduced the fee for
Dr. Hyde to $40.00 based on 28 U.S.C. § 1821.  Neither party
contests this reduction, so I do not address it in this
memorandum.

in the case."  The plaintiffs argue that the clerk's award of

$2,861.75 for copying and $5,152.17 for exemplifications is

improper because (1) the majority of photocopying costs are not

recoverable and (2) the defendants have not sufficiently itemized

their costs.


        1.    Photocopying

        Insofar as the plaintiffs argue that the majority of

photocopying costs are not recoverable, they misconstrue the

applicable case law on taxation.  § 1920(4) specifically states

that copying and exemplification costs for papers necessarily

obtained for use in the case are taxable.  See also Fed. R. Civ.

P. 54(d) ("costs shall be allowed as of course to the prevailing

party.").  This statutory provision explicitly allowing for

copying costs creates a "strong presumption" that the costs are

taxable.  In re Paoli, 221 F.3d 462.  Where photocopying costs

are for documents necessarily obtained for use in the case, they

are taxable and, contrary to the plaintiffs' assertions, there is

no "clear precedent" which holds otherwise.[5]

---

[5]      The plaintiffs cite Levin v. Parkhouse, 484 F.Supp.
1091, 1096 (E.D. Pa. 1980) for the proposition that "the law is
clear that not every act of photocopying results in a taxable
cost."  This language does not appear anywhere in the opinion,
nor does the opinion suggest this principle of law.  Rather, in
that case, the court did not allow the taxation of costs
associated with photocopying legal research, since such costs are
more analogous to attorney's fees and are a "cost of doing
business." Id. at 1096.

The plaintiffs also argue that the defendants have not sufficiently itemized their copying costs.  The defendants contend that they are not required to list each document that was copied and that an attestation from counsel is sufficient to validate claimed costs.[6]

Whether or not photocopying costs are taxable depends on the nature of the item copied — items that are necessarily obtained for use in the case are taxable, but items obtained for the convenience of counsel are not.  Herbst v. Gen. Accident Ins. Co., No. 97-8085, 2000 WL 1185517, at *2 (E.D. Pa. 2000); Nugget Dist. Coop. v. Mr. Nugget, Inc., 145 F.R.D. 54, 57 (E.D. Pa. 1992).  The party seeking costs for copying must provide evidence of the material copied so the court can determine whether each copy was in fact necessary.  Where the prevailing party does not provide an itemized description of the copying, Judges on this Court have disallowed or reduced the costs because they were unable to determine whether the costs were necessary.[7]  For

---

[6]     The defendants cite Schauffler v. United Assoc. of Journeymen and Apprentices of the Pipe Fitting Indus. of the U.S. and Canada, 246 F.2d 867 (3d Cir. 1957) for the proposition that counsel's attestation of the validity of costs is given great weight.  However, Schauffler dealt with costs awarded at the discretion of the court in a contempt proceeding and does not reference the substantiation of costs with an affidavit from counsel's attorney.

[7] There is no Third Circuit precedent on the degree of specificity with which a party must enumerate its copying costs.

example, in Montgomery County v. Microvote, the prevailing party

submitted a bill for photocopying that listed the dates of the

copies and the rate that was charged, but did not describe the

documents that were copied.  No. 97-6331, 2004 WL 1087196, at *8

(E.D. Pa. 2004).  In rendering its decision, the court stated

that an affidavit from counsel averring that the copies were

necessary was "conclusory" and "d[id] not assist the court" in

determining the nature of the documents.  Id.  The court held

that, in the absence of descriptions of the documents, it could

not decide whether the documents were necessary and it reduced

the costs by fifty percent.  Id.; see also Elliot, Reihner,

Siedzikoski, & Egan, P.C. v. Richter, No. 96-3860, 2000 WL

427377, at *4 (E.D. Pa. 2000)(reducing award where itemization

was merely a chart with dates and amounts but no description of

what was copied); Herbst, 2000 WL 1185517, (disallowing copying

costs where party provided receipts for copies, but neither

itemized those copy costs, nor demonstrated how many sets of

copies were made); Morgan-Mapp v. George W. Hill Corr. Facility,

No. 07-2949, 2009 WL 1035141, at *3 (E.D. Pa. 2009)(identifying

date and number of copies without describing the documents was

insufficient); Ass'n of Minority Contractors & Suppliers, Inc. v.

Halliday Props., Inc., No. 97-274, 1999 WL 551903, at *4 (E.D.

Pa. 1999) (same); Yudenko v. Guarinni, No. 06-4161, 2010 WL

2490679, at *2 (E.D. Pa. 2010) (disallowing costs because

"although defendants provided receipts for the photocopying, they

do not provide a description of the photocopies obtained.").

         The Second Circuit has also endorsed this standard,

holding that where a party did not itemize photocopy costs or

explain why they were necessary, it was not an abuse of

discretion for the district court to reduce them.  United States

v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir.

1996); Whitfield v. Scully, 241 F.3d 264, 271 (2d Cir.

2001)(reaffirming the court's holding in Merrit).  The Fifth

Circuit's precedent on this issue is also similar to that of the

district courts within this circuit.  See Fogleman v. ARAMCO, 920

F.2d 278, 286 (5th Cir. 1991).[8]

---

        [8]    By contrast, other courts have employed a less rigorous
standard as to the degree of specificity required.  For example,
the Seventh Circuit requires only that the "documentation
establishes that the[] were copies made for this case for its
attorneys and billed in the normal course with the documents
coming in."  Northbrook Excess and Surplus Ins. Co. v. Procter &
Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991); see also Movitz v.
First Nat. Bank of Chicago, 982 F.Supp. 571, 577 (N.D.Ill.,1997).
This standard does not demand descriptions of the documents, but
rather that the copies be related to the case.  Further, the
Seventh Circuit has accepted affidavits from counsel attesting to
the nature of the documents as sufficient to establish costs as
taxable.  See M.T. Bonk Co. v. Milton Bradley Co., 945 F.2d 1404,
1410 (7th Cir. 1991)  The Sixth Circuit has also accepted an
attestation from counsel as sufficient to verify copying costs.
BDT Prods. v. Lexmark Int'l, Inc., 405 F.3d 415, 420 (6th Cir.
2005).  Additionally, the Tenth Circuit has stated that "the
burden of justifying copy costs is not "a high one" and that a
prevailing party need not justify each copy it makes.  Case v.
Unified Sch. Dist. No. 233, 157 F.3d 1243, 1259 (10th Cir. 1998).
 See also In re Williams Sec. Litig. WCG Subclass, 558 F.3d 1144,
1149 (10th Cir. 2009).

The Court is persuaded that the standard used by district courts in this circuit and by the Second Circuit is the correct one. Without a description of the documents, the Court cannot decide whether they were necessarily obtained for use in the case. Here, the defendants have provided the following documents to the Court: (1) an affidavit of counsel attesting to costs; (2) a list of dates and amounts, but not descriptions, for photocopies totaling $2,861.75; (3) an invoice in the amount of $122.26 from defendants' printing company. Based on the information provided — merely dates and the rate charged — it is impossible to determine whether the copies were necessary. Therefore, they are not taxable.

### 2.   Exemplification Copy Costs

The plaintiffs also challenge the taxation of exemplification costs. Exemplification costs are specifically taxable under 28 U.S.C. § 1920(4) where they are necessarily obtained for use in the case. The same standard governing photocopies governs copies and exemplification, meaning that the prevailing party must provide the court with evidence of the material copied so the court can determine whether each copy was in fact necessary. Herbst, 2000 WL 1185517, at *2. The prevailing party is "not expected to provide a detailed description of every piece of paper copied, [but] it is expected

to provide the best breakdown of the copied material obtainable from its records." Microvote, 2004 WL 1087196, at *7(citations omitted).

Here, the defendants have included a detailed list of the documents and other records that were produced for exemplification. The degree of specificity is sufficient to allow the court to determine the nature of the documents and whether they were necessarily obtained for use in the case. 28 U.S.C. § 1920(4). The list is itemized with explicit descriptions of the items used for exemplification. The items listed include exhibits for use at trial, subpoena records, and medical records that were relevant to the case. Unlike the list of photocopies, which includes only dates and amounts, the list of exemplifications includes specific descriptions of documents that were necessary to the case. Cf. Microvote, 2004 WL 1087196, at *7-8; Morgan-Mapp, 2009 WL 1035141, at *3. This case was complex with a significant number of exhibits and a voluminous pre-trial record. Given these facts, the exemplification costs are reasonable. The specificity with which defendants have itemized the costs is sufficient to prove that the costs were for items necessary to the case. Accordingly, they are properly taxable.

### 3.    Villanueva Photocopies

The plaintiffs object to the inclusion of $1,494.50 in Villanueva's photocopying costs. In the taxation of costs, the clerk disallowed this claimed expense because it was not sufficiently specific.  In their motion opposing vacation, the defendants did not contest the exclusion of these copying costs. Thus, while the Court is empowered to conduct a de novo review of the bill of costs, it appears that defendants do not object to this disallowance and that it is not in dispute.  Accordingly, the issue is moot.

In any event, these copies are not properly taxable. The defendants have produced only one document – a spreadsheet – which lists $1,494.50 in photocopy costs for Villanueva.  The defendants have adduced nothing further in support of these costs.[9]  Although it is reasonable to assume that Villanueva sustained some photocopy expenses in the course of litigation, it is impossible to determine whether the costs for which he seeks reimbursement were necessary to the case or merely for convenience of counsel.

---

[9]     By contrast, the defendants did provide invoices specifically identifying the transcript and court reporter fees that Villananueva sustained.  See Resp. to Pl.'s Mot. in Opp. to Def.'s Bill of Costs, Daddio Docket No. 217, Ex. D.

4.    Inability to Pay

The plaintiffs' final contention is that it is unfair that they have to pay the defendants' costs because they have limited financial resources and are unable to pay.  Although a court may consider a party's "potential indigency or inability to pay the full measure of a costs award levied against [it]," the court may not consider "relative disparities in wealth" between the parties.  In re Paoli, 221 F.3d at 468; Reger, 599 F.3d at 289.

Here, the parties have introduced no evidence that they are indigent or otherwise unable to pay the full amount of the costs.  Instead, the plaintiffs have merely alleged that Mr. Daddio is a state trooper and that the plaintiffs are a young couple of modest means.  Even if the Court takes these statements as true, they merely establish a disparity in wealth, not indigence or inability to pay.  See Reger, 599 F.3d at 289 ("rejecting the . . . argument that disparity of wealth should be considered in imposing costs.")  There is nothing in the record, such as financial records, affidavits, or tax returns that establish it would be inequitable to impose costs on the plaintiffs.  In the absence of evidence establishing indigence or inability to pay, the Court cannot refuse to tax costs.  See In

re Paoli, 221 F.3d at 464.  Here, there is no evidence of indigence, therefore the costs are taxable against plaintiffs.

An appropriate Order shall issue separately.